## Raleigh, et al. v. Turner, et al.

(Decided February 26, 1924.)

### Appeal from Breathitt Circuit Court.

Deeds—Evidence Held Insufficient to Show Undue Influence, Fraud or Mental Incapacity.—In action by certain children to set aside deeds by parents to other children, evidence held insufficient to make out a case of mental incapacity on the part of the father or of fraud or undue influence on the part of the grantees.

RYLAND C. MUSICK and MORRIS & JONES for appellants.

M. H. HOLLIDAY, HAZELRIGG & HAZELRIGG and A. H. PATTON for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Elliot Turner and his wife, Sarah Turner, had ten children, seven sons and three daughters. He was the owner of about 600 acres of land located in Breathitt county, and in the year 1904 he and his wife conveyed a portion thereof to each of their seven sons by separate deeds, each of which recited a cash consideration of $400.00. He died in the year 1913. In the year 1916 this suit was brought by the three daughters, Zerilda Raleigh, Ruth Turner and Aria Eversole, to set aside the deeds to their brothers on the ground of mental incapacity on the part of the grantor, and fraud and undue influence on the part of the grantees. During the progress of the action Aria Eversole filed an affidavit to the effect that she had been joined as a plaintiff without her knowledge or consent, and that she had received her just proportion of her father's estate, and claimed nothing further. Thereafter the action was prosecuted by her two sisters, and on the final hearing the chancellor entered a decree dismissing the petition. The two sisters have appealed.

The outstanding facts shown by the evidence may be summarized as follows: Long before the execution of the deeds, Elliot Turner made up his mind to divide his estate by deeding his land to his sons and giving to each of his daughters a portion of the timber. He carried out this plan to the extent of placing his eldest son, Segil, on the tract which he subsequently conveyed to him, and shortly before the execution of the deeds he gave to each of his daughters a raft of poplar timber. The timber

given to each of his daughters was about equal in value to the land deeded to each of his sons. Some months before the conveyances were executed, the grantor became subject to epileptic fits, and the witnesses for the daughters say that from that time on his mind was bad, and he was unable to attend to business. According to the weight of the evidence, however, he had but a few attacks before making the deeds, and it was only for a short time during and after the spells that his mind was affected. After that it cleared up and he acted and talked just as any ordinary man. On the day the deeds were executed, his mind was clear and he knew exactly what he was doing. He went with the boys and laid off to each the particular tract he wanted him to have, and told the draftsmen of the deeds precisely how he wanted them drawn. At that time he was the dominant character in the household, and thereafter he continued to conduct his own affairs in a sensible and businesslike way until two or three years before his death, when his mind was not as clear as it had been.

Some stress is placed on the fact that the consideration stated in the deeds was not true, and that this of itself was a badge of fraud. The rule may be conceded, but the attendant circumstances were such as to rebut any presumption of fraud. There was no effort at concealment, nor attempt to make an impression that an actual sale was made. Everyone knew that the grantor, in making the deeds, was merely dividing his estate in accordance with the plan which he had long cherished, and had repeatedly announced to his family and friends. Believing that it was necessary for the deeds to state a consideration, the grantor fixed the consideration at what he thought the property was worth, not only for the purpose of showing the equality of the division between the sons, but for the further purpose of showing that the land given to each was about equal in value to the logs which he gave to each of his daughters.

The transaction was singularly free from any circumstance tending to show undue influence. The case is not one where an old and decrepit father resided with certain of his children and preferred them to the exclusion of others. The case is one where the children made their home with the grantor. Segil, the oldest son, had been given his share of the estate many years before the deeds were executed. Next in age were the three daughters, and after them came the six sons, of whom four,

at least, were immature boys. The grantor provided for each of his children at the same time. The daughters accepted their portion without protest or claim of unfairness. If influenced by any one, it is just as probable that he was influenced by his daughters as by his sons: but he was "a stiff old man," and we are persuaded that the execution of the deeds, as well as the provision made for his daughters, was his free and voluntary act.

We concur in the ruling of the chancellor that the evidence was insufficient to make out a case of mental incapacity on the part of the grantor, or of fraud or undue influence on the part of the grantees.

Judgment affirmed.